IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **In re:** § | § | **Chapter 7** |
| **JOSIAH'S TRUCKING LLC** § | § | **Case No. 21-70009 (EVR)** |
| Alleged Debtor § | § | **(Involuntary Proceeding)** |
| **CATHERINE STONE CURTIS, INTERIM TRUSTEE** § | § § § | |
| v. § | § | **Adv. No. 20-07002** |
| **LAW OFFICE OF ROGELIO SOLIS, PLLC; et al.[1]** § | § § | |

**INTERIM TRUSTEE'S EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO**

---

[1] The Defendants in the above-captioned adversary proceeding are Law Office of Rogelio Solis, PLLC; the Daniel Sorrells Law Firm, PLLC; Ana Gomez; Reyes Adrian Ortiz, individually and obo Anna Isabel Ortiz, Deceased; Rogelio Solis and Daniel Sorrells.

Page 1

91292245v.1

**THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**THE INTERIM TRUSTEE REQUESTS EMERGENCY CONSIDERATION AS SOON AS IS PRACTICABLE, BUT NOT LATER THAN FEBRUARY 12, 2021.**

TO THE HONORABLE EDUARDO V. RODRIGUEZ,
UNITED STATES BANKRUPTCY JUDGE:

Catherine Stone Curtis, the Interim Trustee for the above-referenced bankruptcy estate (the "*Trustee*"), files this *Emergency Motion for Temporary Restraining Order and Preliminary Injection* (the "*Motion*"), in support of her *Complaint to Avoid and Recover Transfer Pursuant to 11 U.S.C. § § 547 and 550* against the Law Office of Rogelio Solis, PLLC; the Daniel Sorrells Law Firm, PLLC; Ana Gomez; Reyes Adrian Ortiz, individually and obo Anna Isabel Ortiz, Deceased; Rogelio Solis; and Daniel Sorrells (collectively, the "*Defendants*").  By this Motion the Trustee seeks a temporary restraining order and preliminary injunction enjoining the Defendants from distributing or otherwise disbursing any insurance proceeds or funds they received from the Policy (defined below) and/or from Brooklyn Specialty (defined below).

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is 11 U.S.C. §§ 105(a), 303(g), and 701 and Rule 2001 and 7065 of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

3. The relief sought by this Motion is necessary to protect the equality of distribution of estate assets among creditors, a Congressionally-mandated and controlling bankruptcy policy and public policy long recognized by the U.S. Supreme Court.  *See*, Report of the Commission

on the Bankruptcy Laws of the United States, H. R. Doc. No. 137, 93rd Cong., 1st Sess., Part I, 68-83 (1973) (the "***Report***").  In the Report Congress identified as the following internal goals of the Bankruptcy Code:

> (1) open access ***of both debtor and creditor*** to the bankruptcy process;
> (2) ***fair and equitable treatment of creditors' claims***;
> . . .
> (4) efficient and economical case administration;
> (5) deterrence and sanctions against fraud ***and other dishonest conduct***; and
> (6) production of information concerning the outcomes and effects of bankruptcy cases.

Report, Part I at 75–83 (1973)(emphasis added).[2]

4. Equality of distribution is the theme of the Bankruptcy Code and a prime bankruptcy policy.  See *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 61 S. Ct. 904, 85 L. Ed. 1293 (1941) ; H. Rept. No. 95-595, p. 178.  *In re Wade* most recently made clear the continued viability of this controlling policy:

> [T]he policy behind this exclusive jurisdiction, wherever located (over property of the estate), is to assure than all property of a title 11 debtor and claims against a debtor are resolved in centralized and orderly proceedings ***to assure . . . among other things, a fair and equitable distribution and treatment among the debtor's creditors***.

*In re Wade*, 523 B.R. 594, 605 (Bankr. WD Tenn 2014) (emphasis added).  *See also*, *Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920 (1913); *Stellwagen v. Clum,* 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918); *Kokoszka v. Belford,* 417 U.S. 642, 645–46, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

---

[2] Both external and internal goals of bankruptcy are included in the Report, complete with substantive analysis of bankruptcy policy and a proposed new Bankruptcy Code.  The "external" goals are the values involved in the "open credit economy," a term used to refer to the role of private credit generally in the economy of the United States.  Report at p. 68; see Kenneth N. Klee, Legislative History of the New Bankruptcy Law, 28 DePaul L. Rev. 941, 942-943 (1978). The Report states that internal goals should prevail in instances of conflict with external goals.  Report at p. 75.

5. This law has been frequently applied in multi-injury or "mass tort" cases where assets to distribute are limited and the class liability is larger than the assets. For example, in *In Re Celotex Corporation*, 204 B.R. 586 (Bankr. MD Fla 1996):

> The Court has the power under the principles of equity to disallow claims for punitive damages. The Trust cannot compensate holders of Asbestos Claims for punitive damages and still treat all similar Claims equitably. Consequently, payment of punitive damages would prevent the fair and equitable treatment of the holders of Asbestos Claims, would frustrate the fair distribution of the Trust Assets, and would subvert the stated purposes of the Plan and of public policy. (citing *See In re Johns–Manville Corp.*, 68 B.R. 618, 627–28 (Bankr.S.D.N.Y.1986), aff'd 78 B.R. 407 (S.D.N.Y.1987), aff'd sub nom. *Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)* 843 F.2d 636 (2d Cir.1988)).

This policy is reflected throughout bankruptcy law as the most important goal of fairness and justice—and is the purpose behind the avoidance of preferential payments and fraudulent transfers.

6. The relief sought by this Motion seeks to avoid the dissipation of what may be the Debtor's only significant asset to a favored few of its creditors, leaving the other victims with no recovery.

## BACKGROUND EVENTS

7. This case arises from a tragic accident that took the lives of two individuals in late December 2020. The Petitioning Creditors (defined below) and the Defendants are a class of representatives of victims with claims, including wrongful-death claims, arising from the negligent accident involving a tractor-trailer combination, owned by Josiah's Trucking LLC (the "***Alleged Debtor***" or "***Josiah's Trucking***") and David Vasquez. On December 19, 2020, Juan Manuel Carrerra was driving a tractor-trailer combination, owned and controlled by Josiah's Trucking LLC and David Vasquez, northbound on FM 493 in Edinburg, Texas. When entering a curve in the roadway, Mr. Carrerra lost control of the tractor-trailer sending the trailer portion of

the vehicle into the southbound lane. At that moment, Carlos Tellez, Jr. and Anna Isabel Ortiz were travelling in the southbound lane on FM 493. The trailer portion of the tractor-trailer entered the southbound lane striking Carlos Tellez, Jr. and Anna Isabel Ortiz causing fatal injuries that led to their deaths. (the "***Accident***"). *See* police report attached as **Exhibit 1** to the Declaration supporting this Motion.[3]

8. The liability from the Accident caused the Alleged Debtor to be insolvent. The Alleged Debtor's insolvency was assured at the moment of the Accident.

9. Anna Isabel Ortiz is survived by Ana Gomez and Reyes Adrian Ortiz (collectively, the "***Ortiz Family***").

10. Carlos Tellez, Jr. is survived by Sonia Tellez, Carlos Tellez, Rose Mary Rodriquez and I, Tellez, a minor (collectively, the "***Tellez Family***").

11. Shortly after the Accident both the Ortiz Family and the Tellez Family engaged counsel and began the claims process. The Ortiz Family employed Rogelio Solis and Daniel Sorrells with the Law Office of Rogelio Solis, PLLC the ("***Solis Law Firm***") and the Daniel Sorrells Law Firm, PLLC (the "***Sorrells Law Firm***"); and the Tellez Family engaged Escobedo & Cardenas, L.L.P.

12. At the time of the Accident, Brooklyn Specialty Insurance Company RRG, Inc. ("***Brooklyn Specialty***") insured Josiah's Trucking under Policy ATP-4-062020 (the "***Policy***"). Brooklyn Specialty has asserted that the Policy provides only One Million Dollars ($1,000,000) in liability coverage. If Brooklyn Specialty is correct, this may be the total amount of coverage under the terms of the Policy, regardless of the number of potential insured or the number of persons with claims as a result of the accident in question

---

[3] All facts necessary for this Court to grant the relief requested are contained in the Declaration supporting this Motion and the exhibits thereto.

13. On December 29, 2020—nine (9) days after the Accident—the Tellez Family, through their counsel, contacted Brooklyn Specialty notifying them of the Accident, the Tellez Family's claims, and requesting the preservation of certain evidence for investigation (the "*December 29th Correspondence*"). [*See* **Exhibit 2** to the Declaration].

14. On January 4, 2021, the Tellez Family filed suit against Josiah's Trucking, David Vasquez (the owner of Josiah's Trucking), and Mr. Carrerra in the Judicial District Court of Hildago County under Cause Number C-0029-21-D (the "*Tellez Lawsuit*"). [*See* **Exhibit 3** to the Declaration].

15. Brooklyn Specialty responded to the Tellez Family's December 29th Correspondence on Thursday, January 7, 2021, and notified them that it intended to repair the vehicle, but offered the Tellez Family an opportunity to inspect it before its repair (the "*BSI Inspection Correspondence*"). [*See* **Exhibit 4** to the Declaration].

16. On January 8, 2021, counsel for the Tellez Family responded and, based on their inspector's availability, proposed January 13th as the inspection date. [*See* **Exhibit 5** to the Declaration].

17. A mere three (3) business days after the BSI Inspection Correspondence—on Tuesday, January 12, 2021—Brooklyn Specialty emailed counsel for the Tellez Family advising them they were welcome to inspect the vehicle, but to be aware that the Policy limits had already been exhausted. [*See* **Exhibit 6** to the Declaration].


> **From:** Claims <claims@brooklynspecialty.com>
> **Sent:** Tuesday, January 12, 2021 2:16 PM
> **To:** Luis Cardenas <luis@escobedocardenas.com>; Amparo Price <amparo@escobedocardenas.com>
> **Subject:** RE: Tellez - Notice of Intent to Repair and Offer to Inspect Tractor
>
> Mr. Cardenas:
>
> The tractor and trailer are available for inspection on the date and time proposed. We are agreeable to the protocol, except for the provision allowing the removal of any of the control modules. If this is acceptable, please confirm in writing and we will notify the tow yard of the scheduled inspection.
>
> Please be advised that the policy limits under Josiah's Trucking, LLC have been exhausted. Please advise if the inspection will go forward.
>
> Thank you,
>
> Julia
>
> **Brooklyn Specialty Insurance Co. RRG, Inc.**
> 5630 University Parkway
> Winston-Salem, NC 27105

18.     Unbeknownst to the Tellez Family, while they were engaging Brooklyn Specialty regarding the Accident, Brooklyn Specialty was simultaneously negotiating a settlement with the Ortiz Family. Less than twenty-four (24) days after the Accident, which included the Christmas and New Year's holidays, Brooklyn Specialty settled with the Ortiz Family. On or around January 12, 2021, Brooklyn Specialty made one or more transfers totaling as much as $1,000,000.00 to defendant the Solis Law Firm, counsel for the defendants Ana Gomez and Reyes Adrian Ortiz obo Anna Isabel Ortiz, Deceased (the "*Transfer*").

19.     At the time of the Accident, the Debtor had an equitable interest in the proceeds of the Policy. *See Martinez v. OGA Charters, L.L.C. (In re Charters, L.L.C.)*, 901 F.3d 599 (5th Cir. 2018). To the extent Brooklyn Specialty has the proceeds in its possession or control, those insurance policy proceeds are property of the bankruptcy estate under 11 U.S.C. § 541(a)(1), and are subject to the automatic stay, and Brooklyn Specialty (or entities seeking payments from the policy) must seek relief from the automatic stay before making any advances or payments under the policy.

20.     As evidenced by the Complaint filed in this adversary proceeding, to the extent

that the proceeds were transferred to the Defendants, such transfer(s) was a preferential transfer and the Trustee has filed suit to avoid and recover such transfer(s) pursuant to 11 U.S.C. § 547 and 550.  Any attempt by the Defendants to dissipate any proceeds already paid is inequitable and would upend the *pro-rata* distribution scheme as mandated by Congress in the Bankruptcy Code.  Further, because the policy proceeds become property of the estate upon recovery under 11 U.S.C. § 541(a)(3), those proceeds will increase the overall value of the estate for the benefit of all creditors, not just a favored few.

21.     While the Trustee is in the initial stages of her investigation, it appears that the Alleged Debtor has little or no assets with which to pay the millions of dollars in victim claims other than the proceeds from the casualty insurance policy it owns.  The Alleged Debtor and Brooklyn Specialty have knowingly created avoidable preferences and/or fraudulent transfers out of the ordinary course of the Debtor's business by making these "out of the ordinary course of business" distributions from property in which the Alleged Debtor had an interest and that directly and adversely harm creditors of the same class and entitlement.

## ARGUMENTS AND AUTHORITIES

### A.     The Debtors Insurance and Proceeds Thereof Are Property of the Estate:

22.     A debtor's interest in an insurance policy falls within Bankruptcy Code § 541(a)(1)'s broad definition of estate property. *See In re OGA Charters, L.L.C.*, 901 F.3d 599, 605 (5th Cir. 2018); *In re Vitek, Inc.*, 51 F.3d 530, 533 (5th Cir. 1995);[4] *see also In re Louisiana*

---

[4] The Second Circuit, after noting initially that a debtor's insurance policy is generally the property of the estate, held that MacArthur's rights as an insured distributor were completely derivative of, and therefore inseparable from, Johns-Manville's rights as the primary insured. *Id*. at 92.  As a result, the Second Circuit held that as MacArthur's interest in the liability policies was not an independent interest but rather stemmed from Johns-Manville's own rights, the policies, and MacArthur's interest in them, were part of the bankruptcy estate and subject to the jurisdiction of the bankruptcy court. *Id*. at 93; see also In re Adelphia Communications Corp., 364 B.R. 518, 526 n.18 (Bankr. S.D.N.Y. 2007) (citing MacArthur and Louisiana World to find that D&O liability insurance policies were property of the estate because "they provide coverage the Estate can use; the Estate is worth more with them than without them; and because the policies are something that someone may pay for").

*World Exposition*, 832 F.2d 1391, 1399 (5th Cir. 1987); *MacArthur Co. v. Johns- Manville Corp.*, 837 F.2d 89 (2d Cir. 1988). Most every mass-tort case involves the bankruptcy jurisdiction over casualty insurance for the purpose of fair and equitable distributions. *See Johns-Manville Corp., supra*.

23. Courts in those cases where liability insurance proceeds were insufficient to cover all tort claims potentially falling within the debtor's insurance coverage either have held that the insurance proceeds fall within the scope of property of the estate or have enjoined litigation under 11 U.S.C. § 105 because of the "secondary effect" that payment of the insurance proceeds to tort claimants will have on the remaining claims against the estate. In *In re OGA Charters, L.L.C.*, the Fifth Circuit found that in the "limited circumstances . . . where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate." *In re OGA Charters, L.L.C.*, 901 F.3d at 604 (internal quotations omitted).

24. Under the "secondary effect" theory, even if the insurance proceeds themselves are not property of the estate insofar as they are payable directly to claimants; rather, courts have found that having claims against the estate satisfied out of insurance proceeds has a "secondary effect" on the overall administration of the bankruptcy estate, since every dollar that an insurance policy pays for covered tort claims is an extra dollar for other, tort creditors. *See A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1008 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

25. Under the circumstances of this case, the Policy proceeds were property of the Alleged Debtor at the time the Accident occurred. *See OGA Charters, L.L.C. (In re Charters,*

*L.L.C.)*, 901 F.3d at 604.  The Alleged Debtor had an equitable interest in the proceeds at the time of the Accident.  *Id.*

      **B.**     **Rule 7065 Injunctive Relief Is Appropriate to Maintain the *Status Quo* While the Avoidance Litigation Proceeds:**

26.    The Temporary and Preliminary Injunction provisions found in Bankruptcy Rule 7065 (incorporating Federal Rule of Civil Procedure Rule 65) require the Court review and determine the following four elements in order to issue injunctive relief:

    a. <u>First, whether the movant has a substantial likelihood of success on the merits.</u>  Under applicable Fifth Circuit precedent, is without question that the Policy proceeds are property of the Alleged Debtor's bankruptcy estate.  Further, it is without question, that the Transfer to the Defendants was (i) made for the benefit of the Defendants, (ii) made on account of an antecedent debt owed by Alleged Debtor, (iii) made when the Alleged Debtor was insolvent, (iv) made within 90 days of the Petition Date, and (iv) the Defendants received more than they would have received in a chapter 7 if such transfer had not been made.  Whether the Alleged Debtor had an interest in the proceeds at the time of the Accident and when the Transfer was made is likely the only issue that will be in dispute.  Given Fifth Circuit precedent and the fact that the Bankruptcy Code does not create property rights, it is self-evident that the Alleged Debtor had an interest in the proceeds at the time of the Accident and when the Transfer was made.  The Trustee has a substantial likelihood of prevailing on the merits of the adversary proceeding.

    b. <u>Second, whether the movant will suffer irreparable injury if the preliminary injunction is not granted</u>.  Brooklyn Specialty has asserted that a substantial portion, if not all, of the proceeds of the Policy have been dispersed to the Defendants.  If the Court does not enjoin the further dissipation of those proceeds by the Defendants, it is clear that many creditors will likely not receive any compensation for their death claims, while others will receive substantial sums.  The Trustee has clearly shown substantial harm and irreparable injury.

    c. <u>Third, whether that harm outweighs the harm to the opposing party if the preliminary injunction is granted</u>.  In this case, there will be no harm to anyone if those that have received any prior distributions are enjoined from spending or further dissipating such proceeds because such injunction would act to preserve the *status quo*, subject to a trial on the merits.

    d. <u>Finally, whether the preliminary injunction is in the public interest.</u>  This element is prima facie established where it is shown that a common fund is

>available to pay personal injury claims and injunctive relief is required to preserve that fund for a fair and equitable distribution. The "race to the courthouse" is not favored by public policy, while a fair and equitable distribution scheme is.

The purpose of a Federal Rule of Bankruptcy Procedure 7065 temporary restraining order and a preliminary injunction under Rule 7065 is to maintain and preserve the *status quo* and ". . . to preserve the relative positions of the parties until a trial on the merits may be held." *See, e.g. University of Texas v. Cameenisch*, 451 U.S. 390, 395 (1981).

27. As set forth above, each of the four elements is satisfied and entry of a temporary restraining order and preliminary injunction under Rule 7065 is proper.

**C. Section 105 of the Bankruptcy Code Is Appropriate Relief to Maintain the *Status Quo* While the Avoidance Litigation Proceeds:**

24. Pursuant to section 105(a) of the Bankruptcy Code, the Court is authorized to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier, Bankruptcy ¶ 105.01 (Alan N. Resnick and Henry J. Sommer eds., 2009). Here, this Court has jurisdiction over all of the Alleged Debtor's assets and interest in assets the Alleged Debtor transferred within the 90 days prior to the Petition Date, wherever located, pursuant to 28 U.S.C. 1334, and the threat of further dissipation of those assets by Defendants is a threat to this Court's jurisdiction. Until that jurisdiction is properly known, the *status quo* must be maintained.

25. The automatic stay enjoins all parties, other than the Alleged Debtor, during the "gap period" between the filing of the involuntary petition and the entry of an order for relief, from taking any action to obtain property of the Alleged Debtor's estate. Similarly the Alleged

Debtor is stayed from, and may not make, any distributions of property of the estate outside the ordinary course of the Alleged Debtor's business.

26. Authority from section 105 to issue all orders necessary in combination with the authority of section 1471, Title 28, gives the bankruptcy court "jurisdiction" to enjoin proceedings against non-debtor entities without strict adherence to the traditional Rule 65 standards. The cases most often dealing with the expanded scope of injunctive relief unique to Bankruptcy Courts rely heavily on the "interest" which the debtor has in the property of the estate sought to be protected. *See, e.g. S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987) (debtor had contractual interest in property); *Missouri v. U.S. Bankruptcy Court for the E.D. of Ark.*, 647 F.2d 768, 774 (8th Cir. 1981). The circuit court of appeals in *A. H. Robins Co. v. Piccinin (In re A. H. Robins Co.)* relied upon the broad definition of property under section 541, and took into account the legal and equitable interest of the debtor in property wherever located and the public interest in the bankruptcy process in holding that the court has an obligation to protect the estate from diminution. *A. H. Robins Co. v. Piccinin (In re A. H. Robins Co.)*, 788 F.2d 994, 1003 (4th Cir. 1986); *In re Baldwin United Corp.*, 765 F.2d 343, 348 (2d Cir. 1985). Thus, in an appropriate case, the bankruptcy court may grant a preliminary injunction staying a creditor or third party actions that adversely impacts the estate of the Alleged Debtor or its creditors. *See In re Landmark Air Fund II*, 19 B.R. 556 (Bankr. N.D. Ohio 1982); s*ee also United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491–92, n.3 (9th Cir. 1993).

28. Pursuant to Federal Rule of Bankruptcy Procedure 7065, the Trustee requests no bond or security be required in connection with the issuance of the requested temporary restraining order. Due to the nature of the Trustee's request, no bond is required for the

enforcement of a § 105 injunction, and under these circumstances, no bond should be required for the temporary relief sought by way of Federal Rule of Bankruptcy Procedure 7065. *See, e.g. Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir 1985); 7, Moore's Federal Practice ¶ 65.04[1] at 65-38.

29. Without the automatic stay of the Bankruptcy Code and this Court's intervention through Section 105 and Rule 7065 to enjoin any actions to destroy the *status quo* of the Alleged Debtor's assets and the proceeds of the Policy, the Trustee has no adequate remedy to enforce the policy endorsed by both Congress and the Supreme Court of fair and equitable treatment of all of the Accident victims and their survivors.

## EMERGENCY RELIEF AND NOTICE

31. Emergency relief is required to protect this Court's jurisdiction over the property of the Alleged Debtor's estate and to preserve the proceeds of the Debtor's Policy in the hands of any third party, including the Defendants. The Trustee seeks temporary relief for up to 14 days and interim relief until this Court conducts a trial on the merits of the claims asserted in the Complaint.

32. Notice of this Motion has been given to the Debtor and registered agent, the Defendants and all known creditors and their attorneys, if known, as well as the United States Trustee. This notice is adequate to accomplish the due process requirements of the interim protection of the Debtor's assets and the preservation the proceeds of the Debtor's Policy in the hands of any third party requested in this Motion.

33. The Declaration supporting this Motion, and all Exhibits verified and authenticated therein, are incorporated herein by reference for all purposes as if full set out herein verbatim.

91292245v.1

Catherine Stone Curtis, Interim Trustee requests that this Court issue a temporary restraining order, in substantially the form filed herewith, granting the relief requested in this Motion, setting a hearing for a temporary injunction, and for such other and further relief as may be just and proper under the circumstances.

Dated: February 9, 2021

Respectfully submitted,

*/s/ Simon R. Mayer*
Elizabeth M. Guffy
Texas Bar Number 08592525
Simon R. Mayer
Texas Bar Number 24060243
Locke Lord LLP
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 226-1507
Facsimile: (713) 229-2675
Email: Eguffy@lockelord.com
      Simon.Mayer@lockelord.com

***Attorney for Catherine Stone Curtis,
Interim Trustee***

### Rule 9013-1(i) Certificate

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Simon R. Mayer*
Simon R. Mayer

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on February 9, 2021 notice of the filing of this Declaration was served on the below named parties by available knowledge, including by email, if known, fax, if known, and overnight mail, if known.

Matthew Okin
Okin Adams
1113 Vine St., Suite 240
Houston, Texas
Attorney for Law Office of Rogelio Solis, PLLC; Daniel Sorrells Law Firm, PLLC; Ana Gomez; Reyes Adrian Ortiz, individually, and obo Anna Isabel Ortiz, deceased; Rogelio Solis; and Daniel Sorrells

Rogelio Solis
Law Office of Rogelio Solis, PLLC
205 E. Expressway 83
Pharr, TX 78577
Individually and as Attorney for Ana Gomez and Reyes Adrian Ortiz obo Anna Isabel Ortiz, deceased

Daniel Sorrells
Daniel Sorrells Law Firm, PLLC
PO Box 2307
Edinburg, TX 78540
Individually and as Attorney for Ana Gomez and Reyes Adrian Ortiz obo Anna Isabel Ortiz, deceased

Ana Gomez (mother of Ortiz, deceased)
3707 E. US Bus. Hwy. 83
Lot 215
Donna, TX 78537

Reyes Adrian Ortiz (father of Ortiz, deceased)
1000 Darlene Avenue
Weslaco, TX 78599

                                        */s/ Simon R. Mayer*
                                         Simon R. Mayer

91292245v.1