United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 09, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 21-70009 |
| JOSIAHS TRUCKING, LLC, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| | § | |
| CATHERINE STONE CURTIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 21-7002 |
| | § | |
| LAW OFFICE OF ROGELIO SOLIS PLLC | § | |
| and | § | |
| ANA GOMEZ, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

The Law Office of Rogelio Solis, PLLC and Ana Gomez seek dismissal of chapter 7 trustee Catherine Stone Curtis's avoidance actions brought pursuant to 11 U.S.C. §§ 547 and 550. Catherine Stone Curtis filed a response on May 3, 2021. On November 3, 2022, the Court held a hearing and for the reasons stated herein, the Law Office of Rogelio Solis, PLLC and Ana Gomez's motion to dismiss the complaint is denied.

### I. BACKGROUND

1. On December 19, 2020, an automobile accident occurred when the trailer from a tractor trailer owned by Josiah's Trucking, LLC ("*Debtor*") entered into the southbound lane of FM 493 and collided with a vehicle carrying Carlos Tellez, Jr., and Anna Isabel Ortiz, ultimately resulting in their deaths ("*Accident*").[1]

2. Anna Isabel Ortiz is survived by Defendant Ana Gomez ("*Gomez*") and Reyes Adrian Ortiz (collectively, "*Ortiz Family*").[2]

---
[1] ECF No. 38 at 8, ¶ 8.
[2] *Id.* at ¶ 9.

3. Carlos Tellez, Jr. is survived by Sonia Tellez, Carlos Tellez, Rose Mary Rodriquez, and I. Tellez, a minor (collectively, "*Tellez Family*" or "*Petitioning Creditors*").[3]

4. Shortly after the Accident both Gomez and the Tellez Family engaged counsel and began the claims process. Gomez employed the Solis Law Firm ("*Solis*" and together with Gomez, "*Defendants*"); and the Tellez Family engaged Escobedo & Cardenas, L.L.P.[4]

5. At the time of the Accident, Brooklyn Specialty Insurance Company RRG, Inc. ("*Brooklyn Specialty*") insured Debtor under Policy ATP-4-062020 ("*Policy*"). Brooklyn Specialty has alleged that the applicable limit of liability under the policy is $1,000,000.00 ("*Policy Limit*").[5]

6. Gomez, through the Solis Law Firm, made a *Stowers* demand on Brooklyn Specialty for the limits of the Policy.[6]

7. On January 12, 2021, Brooklyn Specialty paid as much as $1,000,000.00 ("*Policy Proceeds*") into Solis's IOLTA account Ana Gomez, thereby exhausting the alleged Policy Limits.[7]

8. On January 18, 2021, the Solis Law Firm caused two checks to be drafted from its IOLTA account. Check number 223, in the amount of $680,000.00, was made payable to Gomez. Check number 224, in the amount of $320,000.00, was made payable to Solis, for Gomez's attorney's fees.[8]

9. On January 26, 2021, the Tellez Family filed an involuntary bankruptcy petition ("*Involuntary Proceeding*") against Debtor under chapter 7 of title 11 of the United States Code[9] in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division.

10. On February 9, 2021, Catherine Curtis ("*Trustee*" or "*Plaintiff*"), then the interim trustee, filed the "Complaint to Avoid and Recover Transfer Pursuant to 11 U.S.C. §§ 547 and 550"[10] initiating this Adversary Proceeding against Defendants.

11. On February 9, 2021, Trustee, filed her Emergency Motion for Temporary Restraining Order and Preliminary Injunction[11] ("*TRO Motion*"), seeking a temporary restraining order and

---

[3] *Id.* at ¶ 10.
[4] *Id.* at ¶ 11.
[5] *Id.* at 4, ¶ 12.
[6] *Id.* at 5, ¶ 18.
[7] *Id.*
[8] *Id.* at 5, ¶ 19.
[9] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e., §) thereof refers to the corresponding section in 11 U.S.C. Citations to the docket in this adversary proceeding styled *Catherine Stone Curtis v. The Law Offices of Rogelio Solis, PLLC and Ana Gomez* 21-7002 ("*Adversary Proceeding*"), shall take the form "ECF No. __," while citations to the bankruptcy case, 21-70009 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. __."; Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e., §) thereof refers to the corresponding section in 11 U.S.C. Bankr. ECF No. 1.
[10] ECF No. 1.
[11] ECF No. 2.

preliminary injunction enjoining Defendants from distributing or otherwise disbursing any of the Policy Proceeds or funds they received, whether directly or from their counsel, from the Policy or from Brooklyn Specialty.

12. On February 11, 2021, the Court entered a Stipulation and Agreed Order, which resolved the temporary restraining order of the TRO Motion and sought to maintain the status quo until March 11, 2021.[12]

13. On February 25, 2021, the Court entered its "Order Granting Emergency Motion of Josiah's Trucking LLC to Convert to Chapter 11"[13] converting the Involuntary Proceeding into a bankruptcy case under chapter 11 of the Bankruptcy Code.

14. On March 3, 2021, the Court entered its "Order Vacating Order Directing Appointment of Chapter 11 Trustee"[14] and "Corrected Order Directing Appointment of Chapter 11 Trustee Pursuant to 11 U.S.C § 1104"[15] directing the appointment of a chapter 11 trustee by the United States Trustee ("*UST*").

15. On March 9, 2021, the UST filed its "Application for Order Approving Appointment of Chapter 11 Trustee."[16]

16. On March 9, 2021, the Court entered another Stipulation and Agreed Order[17] ("*Second Stipulation*") which, among other things, requires that Defendants will maintain in their possession, custody, and control a combined balance of not less than $400,000 during the time period the Second Stipulation is in effect, which period shall be no less than sixty days from the date the Court enters the Second Stipulation.

17. On March 10, 2021, the Court entered the "Order Approving Appointment of Chapter 11 Trustee in the Josiah's Trucking, LLC Case,"[18] approving the appointment of Catherine Stone Curtis as chapter 11 trustee.

18. On March 22, 2021, Trustee filed her "Expedited Motion To Convert Chapter 11 Case To Chapter 7."[19]

19. On March 25, 2021, Debtor filed "David Vasquez's Non-Opposition To Trustee's Motion To Convert Chapter 11 Case To Chapter 7."[20]

---

[12] ECF No. 17.
[13] Bankr. ECF No. 61.
[14] Bankr. ECF No. 62.
[15] Bankr. ECF No. 69.
[16] Bankr. ECF No. 74.
[17] ECF No. 30.
[18] Bankr. ECF No. 77.
[19] Bankr. ECF No. 89.
[20] Bankr. ECF No. 97.

20. On March 26, 2021, Trustee filed her amended complaint[21] ("*Complaint*") setting forth two causes of action: Count I – Transfer Avoidable Under 11 U.S.C. § 547; and Count II – Transfer Recoverable Under 11 U.S.C. § 550.[22]

21. On April 7, 2021, the Court signed an order converting the case to chapter 7.[23]

22. On April 9, 2021, Defendants filed the instant "Defendants' Motion to Dismiss the Plaintiff's Complaint"[24] ("*Motion to Dismiss*").  On the same date, Defendants filed their "Defendants' Motion to Withdraw the Reference."[25]

23. On May 3, 2021, Trustee filed "Plaintiff's Objection to Defendants' Motion to Withdraw the Reference."[26]

24. On May 13, 2021, this Court issued its Report and Recommendation to the United States District Court recommending that the reference be immediately withdrawn, but that the District Court then refer the adversary proceeding to the undersigned judge for adjudication of all pretrial matters, with the undersigned judge thereafter notifying the District Court when the dispute is ready to be tried.[27]

25. On July 14, 2022, the United States District Court adopted this Court's recommendation.[28]

26. On November 3, 2022, a hearing on the Motion to Dismiss was held (the "*Hearing*") and the Court now issues the instant memorandum opinion.[29]

## II. JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under Title 11 or arising in or related to cases under Title 11." An adversary proceeding falls within the Court's "related to" jurisdiction if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[30] Section 157 allows a district court to "refer" all bankruptcy

---

[21] ECF No. 38.
[22] *Id.*
[23] Bankr. ECF No. 114.
[24] ECF No. 41.
[25] ECF No. 42.
[26] ECF No. 53.
[27] ECF No. 56.
[28] ECF No. 59.
[29] ECF No. 68.
[30] *In re Trevino*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir. 1987).

and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[31] This Court determines that since the Complaint alleges a preference claim under § 547 and for recovery of the funds under § 550 of the Bankruptcy Code, the adjudication of preference claims and for recovery are statutorily "core" under 28 U.S.C. § 157(b)(2)(A), (F), and (O).

Furthermore, this Court may only hear a case in which venue is proper.[32] Pursuant to § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[33] Debtor's underlying chapter 7 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

### III.   ANALYSIS

### A. Standard of Review for Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles. First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[34] "[A] formulaic recitation of the elements of a cause of action will not do."[35] Specifics are unnecessary, but some facts must support each element.[36] Second, the complaint must state a claim "plausible on its face,"[37] meaning the plaintiff's right to relief must rise above a "speculative level."[38] Rule 8(a)(2) requires a plaintiff to plead "a short and plain

---

[31] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[32] 28 U.S.C. § 1408.
[33] 28 U.S.C. § 1409(a).
[34] *See* FED. R. BANKR. P. 7008 (incorporating FED. R. CIV. P. 8(a)).
[35] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[37] *Twombly*, 550 U.S. at 570.
[38] *Id.* at 555.

statement of the claim showing that the pleader is entitled to relief."[39] In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[40] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[42]

Motions to dismiss are disfavored and thus, rarely granted.[43] When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[44] This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[45] When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[46] The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[47] And although this Court "will not strain to find inferences favorable to the plaintiff[],"[48] the facts need only be sufficient "for an inference to be

---

[39] FED. R. CIV. P. 8(a).
[40] 556 U.S. at 679 (quoting Rule 8(a)(2)).
[41] *Id*. at 678.
[42] *Id*. (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc*., 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).
[43] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).
[44] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).
[45] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).
[46] *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir. 1999).
[47] *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993).
[48] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

drawn that the elements of the claim exist."[49]

## B. Defendants' Motion to Dismiss

In the Complaint, Plaintiff pleads that on or around January 12, 2021, Brooklyn Specialty made a $1,000,000 transfer to Solis's IOLTA account on behalf of Gomez.[50] From the IOLTA, a check for $680,000 was made payable to Gomez and another check for $320,000 was made payable to Solis in satisfaction of the attorney's fees owed by Gomez.[51] Plaintiff alleges that Gomez was an initial transferee and Solis was an immediate or mediate transferee.[52] Trustee seeks to avoid the initial transfer of $1,000,000 pursuant to 11 U.S.C. § 547 and to recover $680,000 from Gomez and $320,000 from Solis pursuant to 11 U.S.C. § 550.[53]

Defendants offer three main arguments as to why their Motion To Dismiss should be granted. First, Defendants argue that Plaintiff's § 547 claim should be dismissed because Plaintiff has failed to allege a transfer of Debtor's property.[54] Second, Defendant's assert that since Plaintiff's § 547 claim for avoidance should be dismissed, both of Plaintiff's § 550 claims for recovery must also be dismissed.[55] Finally, in the alternative, Defendants argue that because Solis is as an immediate or mediate good faith transferee, Plaintiff's claim to recover the $320,000 transfer to Solis under § 550(b)(1) should be dismissed.[56] The Court will consider each in turn.

1. **Whether Plaintiff has failed to allege a transfer of Debtor's property as required by § 547**

---

[49] *See Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *to Walker v. South Cent. Bell Tel. Co*., 904 F2d 275, 277 (5th Cir. 1990)).
[50] ECF No. 38.
[51] *Id.* at 5, 9, ¶¶ 18–19, 40–41.
[52] *Id.* at 5, 9, ¶¶ 19, 41.
[53] *Id.* at 1, 9, ¶¶ 1, 42.
[54] ECF No. 41 at 9-12.
[55] *Id.* at 12.
[56] *Id.* at 12-13.

Defendants first argue that Plaintiff's claim to avoid the initial transfer of $1,000,000 pursuant to 11 U.S.C. § 547 should be dismissed because Plaintiff failed to allege a transfer of Debtor's property.[57] Section 547 of the Bankruptcy Code permits a trustee to avoid transfers of a debtor's property if the transfer meets certain conditions established by statute.[58] An essential element of a claim under § 547(b) requires a showing that a transfer of "an interest of the debtor in property" occurred.[59] Section 541 provides that "the commencement of a case under . . . this title creates an estate." "Such estate is comprised of all . . . legal or equitable interest of the debtor in property as of the commencement of the case."[60] In *Begier v. IRS*, 496 U.S. 53, 59 n.3 (1990), the Supreme Court read the phrase "an interest of the debtor in property" to be coextensive with "interests of the debtor in property" as used in § 541(a)(1).

In the Complaint, Plaintiff alleges that because the sum of all claims arising from the Accident exceed the coverage provided by the Policy, Debtor had an equitable interest in the Policy Proceeds at the time the Accident occurred.[61] In the Motion to Dismiss, Defendants assert that Plaintiff failed to allege that Debtor held legal title in or a contractual right to receive the Policy Proceeds.[62] Therefore, since an insured (i.e., Debtor) lacks control over the disbursement of liability insurance proceeds under Texas law, Defendants contend that the transfer of the Policy Proceeds was not a transfer of an interest of the Debtor as required under 11 U.S.C. § 547.[63]

Plaintiff, in response, citing to *Martinez v. OGA Charters, L.L.C. (In re Charters, L.L.C.)*, 901 F.3d 599, 604 (5th Cir. 2018), pled that Debtor had an equitable interest (i.e., a property interest) in the Policy Proceeds at the time the Accident occurred because the sum of all claims against

---

[57] ECF No. 41 at 9-12.
[58] 11 U.S.C. § 547(b).
[59] *Moser v. Bank of Tyler (In re Loggins),* 513 B.R. 682, 696 (Bankr. E.D. Tex. 2014).
[60] 11 U.S.C. § 541(a)(1).
[61] ECF No. 38 at 7, ¶ 30.
[62] ECF No. 41 at 10, ¶ 33.
[63] *Id.*

Debtor arising from the Accident significantly exceeds the coverage provided by the Policy.[64] Thus, Plaintiff continues, Debtor had a property interest in the Policy Proceeds when the Transfer occurred because upon the filing of the bankruptcy case, the Policy Proceeds would have become property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) had they not been transferred pre-petition.[65]

At first blush, the case at bar appears to mimic the Fifth Circuit's *In re Charters, L.L.C., Inc.* There, a bus owned by a charter company rolled while on its way to a casino in Eagle Pass, Texas.[66] Nine passengers were killed, and more than 40 others were injured.[67] The charter company owned an insurance policy that provided $5,000,000 in liability coverage for "covered autos."[68] A small group of victims and their representatives entered into settlements with the insurance provider that—if valid and enforceable—would exhaust the $5,000,000 in liability coverage.[69] Before the insurance proceeds were paid to the settling victims, the victims that had not settled with the insurance company filed an involuntary bankruptcy petition against the charter company.[70] The claims against the charter company's estate exceeded $400,000,000.[71]

On direct appeal to the Fifth Circuit, the bankruptcy court certified the following question:

"Are proceeds of a debtor-owned liability insurance policy property of the debtor's bankruptcy estate when: (1) the policy covers the debtor's liability to third parties; (2) the debtor cannot make a legally cognizable claim against the policy; and (3) the claims by third parties exceed the coverage limits of the policy[?]"[72]

---

[64] ECF No. 38 at 7, ¶ 30.
[65] *Id.*
[66] 901 F.3d at 601.
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.* at 602.
[71] *Id.*
[72] *Id.*

The Fifth Circuit held that "[i]n the 'limited circumstances' as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate."[73] The Court further found that "the language of § 541(a)(1) is broad enough to cover an interest in liability insurance, namely, the debtor's right to have the insurance company pay money to satisfy debts accrued through the insured's negligent behavior."[74]

Here, there were two victims of the Accident.[75] A survivor of one of those victims, Gomez, made a *Stowers* demand on Brooklyn Specialty, which resulted in Brooklyn Specialty paying the Policy Proceeds into Solis's IOLTA for the benefit of Gomez, exhausting the policy limits.[76] The survivors of the other victim, the Tellez Family, who did not settle with Brooklyn Specialty, filed the instant involuntary bankruptcy petition against Debtor.[77] According to the well-pleaded facts of the Complaint, which the Court must take as true at this stage of the proceeding, claims against Debtor's estate arising from the Accident amount to $8,000,000, far beyond the Policy Limit.[78] Thus, the facts here appear to be the "limited circumstances" addressed in *In re Charter, L.L.C.*

However, there is one critical difference between the present case and *In re Charter, L.L.C.* that the Court must carefully consider. In *In re Charter, L.L.C.*, although the insurance company settled with certain victims and their representatives before the involuntary bankruptcy petition was filed against the charter company, the policy proceeds had not been paid out by the time the involuntary petition was filed.[79] Here, according to Plaintiff's Complaint, the Policy Proceeds were transferred to Solis's IOLTA account fourteen days before the involuntary bankruptcy

---

[73] *Id.* at 604.
[74] *Id.* at 605 (cleaned up) (quoting *Tringali v. Hathaway Machinery Co.*, 796 F.3d 553, 560 (5th Cir. 2018)).
[75] ECF No. 38 at 3, ¶ 38.
[76] *Id.* at 5, ¶ 18.
[77] Bankr. ECF No. 1.
[78] ECF No. 38 at 6, ¶ 32.
[79] *In re Charters, L.L.C.*, 901 F.3d at 602.

petition was filed against Debtor.[80] Additionally, two checks totaling the Policy Proceeds—one for $680,000 to Gomez and one for $320,000 to Solis—were made payable eight days before the involuntary petition was filed.[81] The question then is whether the pre-petition payment of the Policy Proceeds affects whether Debtor had an equitable interest in the Policy Proceeds when the petition was filed.

Looking to *Begier*, the Court finds that the pre-petition disbursement of the Policy Proceeds does not affect Debtor's equitable interest therein. In *Begier*, the Supreme Court stated that

> Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate -- the property available for distribution to creditors -- "property of the debtor" subject to the preferential transfer provision is best understood as the property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.[82]

Then, in *In re Charters, L.L.C.* the Fifth Circuit held that "over $400 million in related claims threaten the debtor's estate over and above the $5 million policy limit, giving rise to an equitable interest of the debtor in having the proceeds applied to satisfy as much of those claims as possible."[83]

According to Plaintiff's Complaint, over $8,000,000 in claims related to the Accident threaten Debtor's estate here, far above the $1,000,000 Policy Limit.[84] Like in *In re Charters, L.L.C.*, this gives rise to an equitable interest of Debtor in having the Policy Proceeds applied to satisfy as much of the $8,000,000 in related claims as possible. Following the rationale of *Begier*, the fact that the Policy Proceeds were subsequently transferred fourteen days prior to Debtor's bankruptcy does not eliminate Debtor's equitable interest in the Policy Proceeds since the purpose

---

[80] *Id.* at 5, ¶ 18.
[81] *Id.* at 5, ¶ 19.
[82] 496 U.S. 53, 58 (1990).
[83] 901 F.3d at 604.
[84] ECF No. 38 at 6, ¶ 32.

of the avoidance provision is to preserve the property includable within the bankruptcy estate and Debtor would have had an equitable interest in the Policy Proceeds but for the transfer.

Lastly, Defendants' argument that under Texas law "an insured lacks control over the disbursement of liability insurance proceeds" and thus, Trustee's claims fail as a matter of law lacks merit.[85] In *In re Charters, L.L.C.*, the Fifth Circuit specifically cited to *Soriano*, a Texas Supreme Court case cited by Defendants, and stated that:

> Under Texas law, insurers do not incur independent liability solely by reason of entering into reasonable settlements that exhaust or diminish the proceeds available to satisfy other claims. However, categorizing the proceeds as property of the estate does not involve any sort of determination regarding the negligent-settlement liability of an insurer or the lack thereof.[86]

As the Fifth Circuit made clear, the subject of insurance carrier liability is separate and distinct from classification of the insurance proceeds as property of the estate. Defendants' argument regarding whether an insured lacks control over the disbursement of liability insurance proceeds is simply not relevant as to whether Debtor had an interest in the Policy Proceeds under § 547. Thus, the Texas law cited by Defendants in this case is inapposite and Defendants' argument fails.

Accordingly, Plaintiff has properly pled that Debtor had an interest in the Policy Proceeds and Defendants' first argument that Plaintiff has failed to allege a transfer of Debtor's property as required by § 547 is denied.

2. **Whether Plaintiff's § 550 claims for recovery should be dismissed because Plaintiff's § 547 claims for avoidance were dismissed**

The basis of Defendants' second argument was that Plaintiff's § 550 claims should be dismissed since § 550 only applies "if a transfer is avoided under § 547" and Defendants have raised an argument warranting dismissal of Plaintiff's § 547 claims.[87] Section 550 of the Bankruptcy

---

[85] ECF No. 41 at 2, ¶ 1 (first citing *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764 (5th Cir. 1999), then citing *Tex. Farmers. Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994)).
[86] *In re Charters, L.L.C.*, 901 F.3d at 605.
[87] ECF No. 41 at 12.

Code allows a trustee to recover transferred property after avoidance.[88] In pertinent part, § 550 provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>  (2) any immediate or mediate transferee of such initial transferee.

In their second argument, Defendants contend that Plaintiff's § 550 claims should be dismissed because Plaintiff failed to state a claim under § 547 and thus § 550 does not apply.[89] The problem with Defendants' second argument is that it rests upon Defendants' unsuccessful first argument to dismiss Plaintiff's § 547 claim. As discussed above, Defendants' first argument fails since they have not raised a sufficient basis for dismissal under § 547. Thus, Defendant's second argument is also without merit.

Accordingly, Defendants' second argument that Plaintiff's § 550 claims should be dismissed is denied.

3. **Whether Plaintiff is precluded from recovery from Solis under § 550(b)(1) as an immediate or mediate good faith transferee**

Next, Defendants assert that under § 550(b)(1) Plaintiff is precluded from recovering $320,000 from Solis because Solis is an immediate or mediate good faith transferee. Section 550(a) provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

---

[88] 11 U.S.C. § 550.
[89] ECF No. 41 at 12.

(2) any immediate or mediate transferee of such initial transferee.

Furthermore, under § 550(b), the liability of the subsequent transferee is subject to a "good faith purchaser for value" defense.[90] Under § 550(b)(1), a trustee may not recover from a subsequent transferee that takes for value, in good faith, and without knowledge of the voidability of the transfer avoided.

Here, Defendants argue that a § 550(a)(2) claim against Solis is prohibited because as demonstrated on the face of the Complaint, Solis took for value and in good faith by accepting payment for legal services rendered.[91] Defendants also assert that Solis took without knowledge of voidability because the insurer had the absolute right under Texas law to settle with Gomez.[92] Defendants cite to § 550(b)(1), which provides that "[t]he trustee may not recover under section (a)(2) of this section from a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." In response, Plaintiff asserts that Defendants did not carry their burden to establish that the property was taken without knowledge of voidability.[93]

"Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."[94] Section 550(b)(1) sets forth an affirmative defense to a trustee's recovery action.[95] Defendants face a high bar to demonstrate an affirmative defense on the face of the Complaint.[96] Defendants assert that the face of the Complaint demonstrates that Solis took for value and in good faith, but then point to Texas state

---

[90] 11 U.S.C. § 550(b).
[91] ECF No. 41 at 12–13, ¶ 39.
[92] *Id.* at 13, ¶ 40.
[93] ECF No. 52 at 8, ¶¶ 23–24.
[94] *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, N.A.*, 467 F.3d 466, 470 (5th Cir. 2006).
[95] *E.g.*, *Schmidt v. Meridian Capital Found. (In re Black Elk Energy Offshore Operations, LLC)*, Case No. 19-03330, 2019 Bankr. LEXIS 2561, at *34 (Bankr. S.D. Tex. Aug. 16, 2019).
[96] *Schmidt v. Fuchs (In re Black Elk Energy Offshore Operations, LLC)*, Case No. 19-3459, 2021 Bankr. LEXIS 227, at *37 (Bankr. S.D. Tex. Feb. 1, 2021) (citing *EPCO Carbon Dioxide Prods., Inc.*, 467 F.3d at 470–71).

law in asserting that Solis lacked knowledge of the voidability of the transfer sought to be avoided.[97] The Texas state law cited by Defendants does not appear on the face of Plaintiff's Complaint, nor does it control the outcome of this case, as discussed above. Thus, the face of the Complaint does not show that Solis received the transfer without knowledge of voidability. Absent that, dismissal under Rule 12(b)(6) is not appropriate.[98]

Accordingly, Defendants' third argument that Plaintiff is precluded from recovery from Solis under § 550(b)(1) as an immediate or mediate good faith transferee is denied.

## IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED November 9, 2022

_____
Eduardo Rodriguez
United States Bankruptcy Judge

---

[97] ECF No. 41 at 13, ¶ 40.
[98] *See EPCO Carbon Dioxide Prods., Inc.*, 467 F.3d at 470–71.